In the Matter of the Workers' Compensation Claim of LITTLE AMERICA REFINING CO., Appellant (Petitioner/Employer),

v.

David WITT, Appellee (Respondent/Claimant).

No. 92–245.

Supreme Court of Wyoming.

June 4, 1993.

Stephenson D. Emery of Williams, Porter, Day & Neville, Casper, for appellant.

Eric A. Easton, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

An employer challenges a worker's compensation award to its employee on three grounds:

First, the employer questions whether the independent hearing examiner had jurisdiction to issue an order scheduling a contested case hearing before the worker's compensation division had taken its final action on the worker's claim. We hold that the hearing examiner had jurisdiction to issue the scheduling order.

Second, the employer asserts that the award decision must be reversed because the employee failed timely to report the occurrence and general nature of the accident to the employer within seventy-two hours "after the general nature of the injury became apparent" to the worker, as required by WYO.STAT. § 27–14–502(a) (1991). We hold that the employee timely reported the occurrence and general nature of the accident within the requisite time period "after the general nature of the injury became apparent" to him.

Finally, the employer contends the hearing examiner's decision that the employee's injury arose out of his employment is not supported by substantial evidence, is arbitrary and capricious, and is characterized by an abuse of discretion. We hold that the hearing examiner's decision is supported by substantial evi-

dence, is neither arbitrary nor capricious, and is not the product of an abuse of discretion.

We affirm the hearing examiner's decision.

### ISSUES

Appellant Little America Refining Company presents its three principal contentions through these issues:

1. Did the Office of Administrative Hearings (hereinafter referred to as "Office") issue its "Order Setting Hearing," dated December 31, 1991, in excess of its statutory jurisdiction, authority or limitations?

2. Was the Office's finding that "[i]t therefore seems most likely that the injury occured [sic] on October 7 or 9, and not over a substantial period of time," supported by substantial evidence?

3. Was the Office's conclusion that "[o]n or about October 7 or 8, 1991, Claimant sustained a work-related injury ...," arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

4. Was the Office's finding and conclusion that "[c]laimant timely notified his employer and timely filed a Report of Injury," supported by substantial evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

5. Was the Office's finding that claimant rebutted, by clear and convincing evidence, the presumptive denial of benefits pursuant to W.S. 27–14–502(c), supported by substantial evidence?

6. Was the Office's finding and conclusion that "[t]he injury does not come from a hazard to which Claimant would have been equally exposed outside of his employment," supported by substantial evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

Appellee David Witt counters with this statement of the issues:

1. Was the decision of the Administrative Hearing Officer dated April 20, 1992 awarding benefits to Petitioner supported by substantial evidence?

2. Was the finding of the Administrative Hearing Officer that the Employee–Claimant timely notified his employer and timely filed a report of injury, supported by substantial evidence?

3. Did the Administrative Hearing Officer have authority to hear this matter?

### FACTS

David Witt (employee) was employed as a maintenance mechanic and heavy equipment operator by Little America Refining Co. (employer) for seventeen years. Following a nine-day elk hunting vacation during which he walked more than eight miles a day in mountainous terrain, the employee returned to work on October 7, 1991. During his hunting vacation he had no accidents, received no injuries, was pain free, and he remained so upon his return to work. On October 7, the employee put a seal and a power steering pump on a backhoe. Between October 8 and October 21, he worked on a pipe cutting and moving job. The pipe on which he worked was in random lengths, one being seventy-two feet long. The size of the pipe ranged from two-inch to six-inch; the weight was about three pounds per foot. On occasion, the employee, along with a co-worker, had to lift the pipe and move it a distance of about ten feet.

On October 17, 1991, the employee told his supervisor, Joe Koenig, that he had been feeling some pain in his back for some time, it was affecting his leg, it was not getting better, and he needed a doctor to look at it. He told Koenig that he was not sure what had caused the pain, that it could be from a 1986 work-related back injury. According to Koenig, the employee told him he was feeling "kind of a tingling sense * * * going down his arm and leg * * * and he thought that he might have reinjured his back * * *." Under cross-examination at the hearing, the employee did not identify any particular incident during the period of October 8 to 17 when he was working with the pipe in which he felt a pop and then immediate pain; rather,

during that time period his back became progressively worse. The employee's co-worker on October 8, was Larry Smith, an employee of Halston Services and on temporary assignment to the employer. Smith testified that on October 8, when he and the employee were picking up a heavy strand of pipe, the employee "started talking about his back was stinging." He further testified that the employee "really didn't complain about saying he just hurt his back. He said his back was hurting." Smith told him to sit down for awhile, which he did.

Although the employee informed his supervisor of his sore back and tingling leg and the need to see a doctor, he did not receive permission from his supervisor to see the doctor until October 22. On that day, the employee called to arrange a doctor's appointment. The doctor, a neurosurgeon who had attended and operated on the employee for the previous back injury, could not see the employee until November 6. From October 22 to November 6, the employee remained at work performing routine maintenance tasks.

Following his doctor's appointment on November 6, the employee had a magnetic resonance imaging test (MRI). On November 11, his doctor told him he had a herniated disk at the L4–5 level in his lower back and that this injury was new and unrelated to the previous one. After receiving his doctor's diagnosis and suggested course of treatment which was surgery, the employee returned to work that day and told his supervisor of the diagnosis and surgery. On November 13, pursuant to Koenig's instruction, the employee told Bob MacNamara, the employer's accounting and office manager, of the diagnosis and need for surgery. The employee filed a written report of injury and a claim that same day. The worker's compensation division, the clerk of the district court, and the employer all received copies of that filing.

On November 15, 1991, the employer filed its report of injury disputing the validity of the claimed injury:

At issue is whether the back problem is a result of workplace or off duty injury.

[The employee] stated that he had told his supervisor that he had a sore back in mid-October; but that he could not remember when he hurt it. Joe Koenig, his supervisor, remembered [the employee] mentioning a sore back, but since [he] was not able to explain a specific incident, Joe did not feel that the complaint warranted an injury report.

On November 18, 1991, the clerk of court informed the employee of the employer's objection to his claim and advised him to contact the clerk's office for an explanation of the procedure for protesting the employer's denial of the claim.

On December 2, 1991, the employee filed an amended report of injury. On December 6, 1991, the clerk of court received and filed the division's "Initial Review–Employer Dispute" document dated December 4. The document requested that the employee provide a written response to the employer's objection and informed the parties that unless the division received an objection to the division's conclusion by December 23, 1991, the division's conclusion would become the final determination. By letter dated December 10, the employee responded to the division's request. He noted his objection to the employer's objection, asserted the injury occurred at work, and stated he had informed his supervisor on October 17. On December 16, 1991, the clerk of court filed the employee's written explanation for claiming benefits. In this narrative, the employee explained in pertinent part:

I feel this was a work related injury because of the job I was assigned prior to the time I began to feel the pain. Approximately seven to ten days prior to the pain, I was lifting 1″ to 3″ pipe from a pipe rack on the ground and moving it by hand in order to pick [it] up with the winch truck. I have done nothing outside of work that could cause this type of injury.

On December 26, 1991, the clerk of court transmitted the claim file to the Office of Administrative Hearings. The hearing examiner issued an order on January 2, 1992, setting the contested case hearing for Jan-

uary 28, 1992. By letter dated January 3, 1992, the division sent the employee a document entitled "Initial Review Concerning Claim For Benefits" in which it stated the conclusion that the employee was ineligible for the benefits claimed. This document was filed January 13, 1992. The division advised the employee that he "may" submit a written objection to the conclusion by January 22, but if he did not then the conclusion "will become the division's final determination."

The contested case hearing was held on January 28, 1992, before the independent hearing examiner. Neither the employer nor the division questioned the hearing examiner's jurisdiction to conduct the hearing. Witnesses testifying at the hearing included the employee, his supervisor, the office manager and a co-worker. The hearing officer recessed the hearing to permit taking the deposition of the employee's neurosurgeon. The deposition was taken February 24, 1992, and incorporated into the hearing record. On April 16, 1992, the hearing examiner heard final argument from the parties. He filed the order awarding benefits to the employee on April 20, 1992.

The employer filed a petition for review with the district court; that court upheld the hearing examiner's decision. The employer timely filed this appeal.

## DISCUSSION

### 1. *Jurisdiction.*

■ In its first contention challenging the hearing examiner's decision, the employer asserts that the hearing examiner lacked jurisdiction to issue the December 31, 1991 order setting the contested case hearing for January 28, 1992, because the division had not yet made a final determination about the employee's claim. In the employer's view, the hearing examiner did not have a "ripe" contested case on December 31, 1991. In support of this position, the employer points to the provisions of WYO.STAT. § 27–14–601(e) (1991) and the division's rules promulgated thereunder for authority that the division must reach a final decision before the clerk of the dis-

trict court may refer the case for review by the hearing examiner. The referenced statutory provision provides that settlement of the compensability of an injury through interviews with employees, the employer and health care personnel or through review of written reports "shall not exceed ninety (90) days from the date the accident report or claim is filed." WYO. STAT. § 27–14–601(e). The division's rule provides that the clerk of the district court shall refer the matter to a hearing examiner if the division has not made a decision within ninety days. State of Wyoming Worker's Compensation Division Rules, Regulations and Fee Schedules, ch. VI, § 2(c). Thus, the employer reasons, even if the division does nothing with respect to a disputed claim, the parties must wait ninety days before a contested case hearing can be requested.

The division issued on January 3, 1992, its document entitled "Initial Review Concerning Claim For Benefits" in which it notified the employee of the division's conclusion that he was ineligible for the benefits claimed. Neither the division nor the employer raised any objection about jurisdiction before the hearing examiner at any time from the date of the order setting a hearing through the date of the hearing examiner's final decision in April, 1992. Despite the division's initial review and the failure to object to jurisdiction, the employer maintains that we should remand this matter to the division with instructions to render a final decision on the claim.

Countering the employer's contention, the employee points out the following statutory provision:

(b) If the employer objects to the compensability of the injury or death resulting from injury, to the right of the employee to receive compensation, to the amount of compensation or to amounts or procedures claimed for medical or hospital care, or if a health care provider objects to the amount paid under this act, or at the request of the employee, the clerk of court shall upon receipt of notice of objection, refer the case to a hearing examiner who shall set the case for hear-

ing at the earliest opportunity. The case shall be determined by a hearing examiner in accordance with the law in effect at the time of the injury following the contested case procedures of the Wyoming Administrative Procedure Act and the Wyoming Rules of Civil Procedure as applicable under rules of the office of administrative hearings. Appeals may be taken from the decision by any party to the contested case to the district court as provided by the Wyoming Administrative Procedure Act. Hearings may be held in any area of Wyoming giving consideration to the convenience of the employee, employer and division.

WYO.STAT. § 27–14–602(b) (1991). Given this straight-forward language, the employee maintains that from the time of the employer's filing of its first objection to the claim, it was evident the objection could not be resolved; thus, under the plain language of the statute, it was proper for the clerk of the district court to refer the case to the hearing examiner for hearing at the earliest opportunity. The employee asserts that any construction of the statute other than this would lead to unnecessary delays.

■ Reflecting upon the manner in which the parties have presented this issue of statutory interpretation to us, we find that we are in that facet of appellate review involving the choice, interpretation and application of the controlling legal precepts. In that facet the scope of our review is plenary. Ruggero J. Aldisert, OPINION WRITING, § 5.4, at 53, 66–67 (1990); *see also* Ruggero J. Aldisert, THE APPELLATE BAR: PROFESSIONAL RESPONSIBILITY AND PROFESSIONAL COMPETENCE—A VIEW FROM THE JAUNDICED EYE OF ONE APPELLATE JUDGE, 11 Cap.U.L.Rev. 445, 467, 471–72 (1982).

From our consideration of the following factors, we find that the employee presents the better argument. We comprehensively reviewed our method of statutory construction in *Parker Land & Cattle v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040 (Wyo.1993). To determine the lawgiver's intent, we construe the statute as a whole and all components of the statute in *pari materia. Parker* at 1042. If the language is unambiguous, we do not usually resort to application of rules of construction. *Parker* at 1043, 1045. "If the language of a statute communicates a plain meaning to this court, that meaning will be applied." *Parker* at 1043 (quoting *Zmijewski v. Wright*, 809 P.2d 280, 282 (Wyo. 1991)). The worker's compensation statutory scheme must be construed as a whole, its component parts in *pari materia*. In a worker's compensation case, the case pleadings include the employee's report of injury, the employer's report of injury, the employee's claim, and other documents filed with the clerk of the district court and the division. WYO.STAT. § 27–214–602(c) (1991). The case file maintained by the clerk of the district court is the official case file for purposes of any contested case proceeding under the act. WYO.STAT. § 27–14–601(n) (1991). The division receives and reviews the initial reports from the employee and the employer to determine compensability of the injury and jurisdiction. WYO. STAT. § 27–14–601(a) (1991). If either the division determines noncompensability or the employer objects to compensability, no subsequent claim for compensation shall be approved until the hearing examiner renders a decision after a contested case hearing. *See*, §§ 27–14–601(a); 27–14–602. If the employer objects to compensability of the injury and the employee's right to receive compensation, upon receipt of that objection the clerk of the district court shall refer the case to a hearing examiner who shall set the case for hearing at the earliest opportunity. WYO.STAT. § 27–14–602(b). "The hearing examiner has exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under [the] act." WYO.STAT. § 27–14–602(c).

The statute states the employee *may* file written objection to the division's determination of noncompensability of an injury within ten days of notice of that determination. WYO.STAT. § 27–14–601(a). Subsection (e) states the division has a time limit of fifteen days for its initial review and ninety days to settle the compensability of an injury and disability claims. WYO.STAT. § 27–14–601(e). We find nothing in the

overall statutory scheme that prohibits what was done in this instance. When the clerk of the district court transmitted the case to the hearing examiner on December 26, 1991, that court official was simply following the plain command of the statute. Upon receipt of the employer's objection, the clerk *shall* refer the case to the hearing examiner who *shall* set the case for hearing at the earliest opportunity. WYO.STAT. § 27–14–602(b). We find a legislative intent to expedite the disposition of the worker's claim.

We consider the following: 1) both the division and the hearing examiner engage in *administrative* determinations, with the latter enjoying the exclusive jurisdiction to make the final determination of the validity and amount of compensation; 2) legislative intent is for an expeditious disposition of a claim; and 3) we liberally construe the statutory provisions "to accomplish the benevolent purpose for which they were promulgated." [1] We hold, therefore, that the hearing examiner acquired jurisdiction for purposes of initiating the contested case proceedings under his exclusive jurisdiction when the clerk of the district court transmitted the official case file to him on December 26, 1991. WYO.STAT. § 27–14–602(b). On December 31, 1992, when the hearing examiner issued the order setting the case for hearing, he was acting within his jurisdiction.

## 2. *Employee's timely report.*

■ In its second contention challenging the hearing examiner's decision, the employer maintains that the employee's claim is barred because he failed timely to "report the occurrence and general nature of the accident" to his employer within seventy-two hours "after the general nature of the injury became apparent," as required by WYO.STAT. § 27–14–502(a) (1991). Pointing to § 27–14–502(c), the employer correctly notes that the employee's failure to report the accident within the requisite time period prescribed by subsection (a), gives rise to a presumption that the claim shall be denied. The employer's contention is premised on the assumption that the date of the employee's injury was either October 7 or 8, 1991. As viewed by the employer, the employee had to report the accident to his employer by either October 10 or 11 under the seventy-two hour rule. Since it is undisputed that the employee did not report his back pain to his supervisor until October 17, the employer concludes that the presumption arose that the claim should be denied.

The employer asserts that the hearing examiner made no specific finding as to when "the general nature of the [employee's] injury became apparent" to him. Furthermore, the employer contends that the hearing examiner apparently determined, albeit incorrectly, that the employee did not become aware of the general nature of his injury until the date of diagnosis, which was November 13, 1991. Because the employee believed that his back pain was related to his prior work-related injury, the employer reasons that the employee knew his back was injured on October 7 or 8 and had to report it within three days to his employer or face claim denial.

Disagreeing with the employer's analysis, the employee maintains that *Big Horn Coal Co. v. Wartensleben*, 502 P.2d 187 (Wyo.1972) is dispositive. There, on July 20, 1971, the employee, with no history of previous back injury or back pain, began to suffer muscle spasms in his lower back area while operating a scraper, a rough-riding piece of equipment. Having no awareness of the cause of the spasms, he saw a doctor who told him it was probably just nerves. He returned to work but was laid off in September, 1971. Apparently in late November, 1971, he entered the hospital where x-rays and a myelogram revealed a back injury. Upon learning that diagnosis, he immediately filed a report of the occurrence and compensation claim. The surgeon who operated to correct the back injury opined that the injury occurred July 20, 1971, and was work-related. The statute then in effect required the employee to report the occurrence of an accident causing injury within twenty-four hours after

1. *Baldwin v. Scullion*, 50 Wyo. 508, 529–30, 62     P.2d 531, 538, 108 A.L.R. 304 (1936).

the injury.[2] The trial court found from the evidence that the employee did not know he had suffered a compensable injury until the x-rays were taken and the myelogram performed and that he timely filed his report and claim immediately after acquiring that knowledge.

In affirming the trial court's decision in *Big Horn*, this court observed that the "question of the time when the employee first knows that he has suffered an injury which results in, or is likely to cause, compensable disability is of course one for the trial judge," which "turns on findings of fact from the evidence." *Big Horn*, 502 P.2d at 187, 189. In *Big Horn*, we reaffirmed the long-standing principle that, in the context of the statutory requirement that an employee must timely report the occurrence causing an injury, "the term 'injury' as used in the compensation statutes means compensable injury." *Big Horn*, 502 P.2d at 188. When *Big Horn* was decided, the standard of review of findings of fact was that the reviewing court accepted as true the evidence favorable to the winning party in the trial court. Today, with the hearing examiner's decision being administrative in nature, our standard of review of his factual findings is whether they are supported by substantial evidence in light of the whole record.

The above principle concerning a compensable injury was operative in *Baldwin*, 50 Wyo. at 535, 62 P.2d at 538–39. There, on July 15, 1934, while he and co-workers were unloading heavy steel pipe from a truck, the employee was struck a glancing blow over the right hip with the end of a pipe. Continuing to work, the employee experienced some pain, which at first was minimal and then progressively worse. In August, 1934, in order to determine the cause of his pain, the employee sought medical advice. From late August, 1934, to mid-January, 1935, the doctors he consulted treated him for arthritic rheumatism. Finally, in mid-January, 1935, one of his doctors determined from x-rays that the employee's condition was due to a fracture in the upper edge of the posterior rim of the acetabulum attributable to the July accident. The statute then in effect required the employee to file his claim within five months after the day on which the injury occurred.[3] Against the employer's contention that the employee's filing in April, 1935, was untimely given the date of injury of July 15, 1934, the trial court found that the employee's compensable injury and disability dated from mid-January, 1935, when his condition was first correctly diagnosed.

In affirming the trial court's award, this court observed:

> Medical science and diagnosis have advanced with well-nigh miraculous strides in the last decade or two, yet they cannot at this time, and probably never will be able to foretell accurately the reaction of every particular human body to every particular hurt it may sustain in industrial employment. Under these circumstances it seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's payroll by doing his regular work and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable injury. We do not think the language employed in the law by our state legislature was reasonably intended to produce any such result.

*Baldwin*, 50 Wyo. at 530–31, 62 P.2d at 539. This court has consistently upheld the *Baldwin* principle. *See, e.g., Matter of Injury to Klevgard*, 747 P.2d 509 (Wyo.1987); *Matter of Meredith*, 743 P.2d 874 (Wyo. 1987); *Pacific Power & Light Co. v. Rupe*, 741 P.2d 609 (Wyo.1987); *In the Matter of Barnes*, 587 P.2d 214 (Wyo.1978).

*Klevgard* is helpful to our resolution of the instant case. There, a registered nurse employed by a hospital hurt her back while lifting a patient from a wheelchair to a bed. Sometime between July 1 and July 11, 1986, she filled out an undated incident

---

**2.** Wyo.Stat. § 27–104 (1957).

**3.** Wyo.Stat. § 124–112 (1931).

report which indicated she experienced lower back pain and pain in her right buttock area. The employer's director of nursing discussed the incident report with the employee on July 12, 1986. At the employee's routine physical examination on July 30, 1986, she reported no back problems other than congenital scoliosis. In mid-September, 1986, the employee spent four days on a wood-gathering vacation with her husband, at the end of which she was limping and complaining of back pain. A few days later, in late September, an examining doctor diagnosed her condition as a herniated disk. In October, 1986, the doctor and the employee discussed surgery. In late October, 1986, the employee filed her claim; the employer objected in early November. The employee had an early December myelogram followed within a few days by surgery.

In *Klevgard,* one of the employer's objections was that the employee failed to report to her employer "the occurrence and general nature of the injury * * * within twenty-four (24) hours after the injury became apparent," as required by the statute then in effect.[4] The trial court found that the employee had complied with the rule. After noting that the question of when an employee first realized that she suffered a compensable injury is one for the trier of fact, we held substantial evidence existed "to warrant the trial court's finding that [the employee] first realized she had a compensable injury when the final diagnosis, rendered on December 1, 1986, revealed the herniated disk." *Klevgard,* 747 P.2d at 510. We choose to follow this line of decisions again today.

Although the hearing examiner did not make an express finding that the general nature of the employee's injury became apparent to him on November 11, 1991, when his doctor gave him the diagnosis of the herniated disk, that factual finding is so implicit in the hearing examiner's stated findings as to be tantamount to an express finding. Applying our standard of review, we find substantial evidence from the whole record to support those findings.

Since we find that the *Baldwin* line of cases, including *Big Horn,* is controlling, we hold that no error exists on this second contention.

## 3. *Work-related injury.*

■ The employer's final contention is that the hearing examiner's decision that the employee's herniated disk injury arose out of his employment is not supported by substantial evidence, is arbitrary and capricious, or is the product of an abuse of discretion. Our standard of review for this contention is well known:

> We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusion of the agency. It is more than a scintilla of evidence.

*Worker's Comp. Div. v. Hollister,* 794 P.2d 886, 891 (Wyo.1990) (quoting *Trout v. Wyoming Oil & Gas Conservation Comm'n,* 721 P.2d 1047, 1050 (1986)) (citation omitted).

The employee testified that he was pain free while on his elk hunting vacation and on October 7, 1991, his first day of employment upon return from that trip and that during the period from October 8 to October 17 his back became progressively worse. The employee's co-worker, Larry Smith, testified that on October 8, while lifting heavy pipe the employee complained about his lower back, and the employee's neurosurgeon testified that the employee's herniated disk more likely than not was caused by his work activities during the October 8 to October 17 time period. Despite all this testimony, the employer asserts that other, conflicting evidence exists which the hearing examiner ignored. In particular, the employer points to conflicting evidence given by the employee, *i.e.,* in

---

**4.** Wyo.Stat. § 27–12–502(a) (1977).

his November 6 office visit he told his doctor that he had been experiencing pain for six weeks or longer which would place the onset of the pain earlier than October 7 or 8.

The hearing examiner heard all the testimony elicited by direct and cross-examination and observed the witnesses' demeanor. The resolution of conflicts in that testimony was for the hearing examiner to make. We cannot substitute our judgment for his as long as the record reveals substantial evidence to support his resolution of the conflict in the evidence. We hold that substantial evidence exists to support his decision that the employee's herniated disk was work-related.

Affirmed.